IN THE MATTER OF ALEXANDER WALDRON, DECEASED.

*Evidence — proof of a testator's signature, not a personal transaction with him — over what claims presented by an executor a surrogate has jurisdiction — Trust — when it does not prevent the running of the statute of limitation — when the statute does not run until after a demand made.*

Upon the final accounting of Willimina and John H. Neilly, as administrators of Alexander Waldron, deceased, Willimina Neilly, as administratrix of the estate of Sarah Byron, deceased, presented a claim against the estate of Alexander Waldron. The claim was founded upon a paper dated November 4, 1828, signed by Alexander Waldron, by which he acknowledged that he had in his possession and held in trust for his sister Sarah Byron, the sum of $268, being the balance of a sum which he and his brother had been directed to pay to their sister by their father's will. He thereby promised to pay to her interest on the said sum as long as it remained in his hands, and to advance to her portions of the principal if necessary.

*Held*, that the surrogate had jurisdiction of the claim.

That the administratrix was properly allowed to prove that the signature to the paper was that of the deceased.

That although the instrument did not create a technical trust, such as would take the case out of the statute of limitation, yet a demand was necessary to set the statute in operation, and that as none was proved, the claim was not barred.

APPEAL by Willimina B. Neilly, administratrix of Sarah Byron, deceased, from an order by the surrogate of Rockland county disallowing a claim presented by her.

*George H. Forster*, for the appellant Willimina B. Neilly, administratrix.

*George W. Weiant*, for the respondents Henrietta Brooks and Caleb Gilleo.

DYKMAN, J. :

On the final accounting of Willimina B. Neilly and John A. Neilly before the surrogate, as administrators of Alexander Waldron, deceased, Willimina B. Neilly presented a claim against the estate, which she held and made as administratrix of Sarah Byron, deceased, founded on the following instrument in writing, made and executed by Alexander Waldron :

"I do hereby acknowledge to have in my possession, and hold in trust for my sister Sally, the wife of George Byron, the sum of

two hundred and sixty-eight dollars, being the balance due to her this day for her proportion of one thousand dollars, directed to be paid by my father in his last will and testament, by my brother Jacob Tobias and myself, to his daughter, for which sum I promise to pay my sister legal interest as long as the same remains in my hands, and from time to time, as her necessities may require, advance to her a proportion of the principal moneys, it having been agreed between me and her husband, the said George Byron, that said moneys shall remain in my hands in trust for his wife and for her sole benefit.   Witness my hand, this fourth day of November, 1828.

" $268.                        ALEXANDER WALDRON."

The signature to the paper was proven by Willimina B. Neilly, and the paper was offered in evidence. It was objected to as a transaction with Alexander Waldron, deceased, and that the witness could not testify respecting it; that it appeared on its face to be barred by the statute of limitations; that the claim could not be tried in the Surrogate's Court. The evidence was excluded, and thus the questions are presented.

On the first point it is to be said that the witness testified to no transaction with the deceased. She merely proved the signature of the paper given to her mother and the transaction was between her father and mother and the deceased. This testimony, therefore, does not fall under the condemnation of the rule invoked for that purpose.

It seems that an action was brought on this claim in the Supreme Court, and that it was there held the surrogate had no power to adjudicate the same. This judgment was reversed by the Court of Appeals, where it was held the surrogate had jurisdiction. What further was determined by the appellate court is unknown to us, as the case is yet unreported.

It remains for us to make disposition of the question arising on the statute of limitations. The legal effect of this instrument was to constitute the deceased man a depositary of the fund, with an agreement to pay interest thereon, and the principal from time to time. He agreed to hold the money in trust for the benefit of his sister, and in the general acceptation of the term a trust was created, but not such an one as to take the case out of the operation of the statute of limitations. It was the same trust that always comes out

of the relation of borrower and lender or bailor and bailee, and the various other relations where confidence and trust are reposed, but not a technical or continuing trust falling within the peculiar jurisdiction of a court of equity. In fact, since the joinder of legal and equitable jurisdiction in the same court, technical trusts within the exclusive control of equity, so as to prevent the application of this statute, are by no means numerous. The deceased became the debtor of his sister, and at any time she might have collected the claim by an action at law. In fact, he owed her the money at the time, in conjunction with her other brother, and this was but an acknowledgment of his personal liability, with a promise to pay interest until the payment of the principal. It has been said that this was a deposit of money, and it was so in the obligation it imposed. A deposit of money with a bank or private person creates a trust, yet it is a loan, payable on demand, and the depositary is not in default and no action will lie against him for the money until payment has been demanded. *Downes* v. *Phœnix Bank* (6 Hill, 297); *Payne* v. *Gardiner* (29 N. Y., 146); *Boughton* v. *Flint* (74 id., 476) were much like this case. The executrix, who was the wife of the deceased, presented a claim against the estate of $800 for money in the hands of the testator on deposit, and it appears from the opinion of the court that the sum was the proceeds of certain notes and a bond and mortgage taken by the testator in his own name for real estate belonging to the wife. All the money was received by him, and she requested him to retain it until she called for it, and he assented. On the facts, the court held that, aside from the question of coverture, an indebtedness existed enforceable at common law in an action for money had and received; that the transaction was a simple deposit, and that the statute of limitations did not commence to run until demand for the money.

Here the six years' statute of limitations was applicable, but there is no evidence of any demand, and therefore the statute never commenced to run. It follows that the claim is not barred by this statute.

In all points, therefore, the decree is erroneous and should be reversed, with costs.

GILBERT, J., concurred; BARNARD, P. J., dissenting

Decree of surrogate reversed, with costs.